**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

Mohamed A.,

Petitioner,

v.

Pamela Bondi, Attorney General,

Kristi Noem, Secretary, U.S. Department of Homeland Security,

Department of Homeland Security,

Todd M. Lyons, Acting Director of Immigration and Customs Enforcement,

Immigration and Customs Enforcement,

Daren K. Margolin, Director for Executive Office for Immigration Review,

Executive Office for Immigration Review,

and,

David Easterwood, Acting Director, St. Paul Field Office, Immigration and Customs Enforcement.

Respondents.

0:25-cv-04515-MJD-ECW

**ORDER GRANTING MOTION FOR WRIT OF HABEAS CORPUS**

---

David L. Wilson and Gabriela Anderson, Wilson Law Group, Minneapolis, MN, for Petitioner Mohamed A.

Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Department of Homeland Security, Todd M. Lyons, Immigration and Customs Enforcement, Daren K. Margolin, Executive Office for Immigration Review, and David Easterwood.

---

## I. INTRODUCTION

This matter is before the Court on Petitioner Mohamed A.'s Emergency Motion for Temporary Restraining Order. (Doc. 4.) Construing the Motion as one for a preliminary injunction, the Court grants the Motion, issues a preliminary injunction, and orders Respondents to provide Petitioner a bond hearing within seven days.

## II. BACKGROUND

Mohamed A., a native and citizen of Ethiopia, entered the United States without inspection on June 30, 2024. (Pet. ¶¶ 27–28.) Respondents encountered Petitioner on June 30, 2024. (Id. ¶ 29.) Respondents served Petitioner with a Notice to Appear, charging him under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1182(a)(6)(A)(i). (Id. ¶¶ 31–32; Ex. B.) Respondents released Petitioner from custody under an Order of Release on

Recognizance on June 30, 2024. (Id.; Doc. 13 ¶¶ 5–6.) Petitioner has been under supervision and compliant with his supervision. (Pet. ¶ 30.) On December 3, 2025, Respondents took Petitioner into custody during a scheduled monitoring check-in appointment. (Id. ¶ 37; Doc. 13 ¶ 8.) Petitioner remains in ICE detention Jail in Minnesota pending removal proceedings. (Pet. ¶ 38.)

On December 3, 2025, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 asserting various grounds for relief. (Doc. 1.) On December 5, 2025, he filed this Motion seeking, among other things, a bond hearing in accordance with 8 U.S.C. § 1226(a) within seven days. (Doc. 4.) On the same date, the Court granted the Motion in part, insofar as the Court ordered that neither Respondents nor any other person or agency shall "remove, transfer, or otherwise facilitate the removal of Petitioner from the District of Minnesota." (Doc. 10 at 6.) Respondents filed a letter stating they would comply with the Court's order. (Doc. 11.) Respondents next filed a consolidated Response to both the Petition and the Motion on December 8, 2025. (Doc. 12.) On December 9, 2025, Petitioner filed a consolidated Reply. (Doc. 14.) The Court held a hearing on the Motion on December 10, 2025. The Court granted the Motion at the hearing. This Order follows.

## III. DISCUSSION

Respondents first argue that the Court lacks jurisdiction to hear the case, and second that Mohamed A.'s claims are not likely to succeed on the merits because 8 U.S.C. § 1225(b) makes his detention mandatory. For the reasons discussed below, the Court concludes that it has jurisdiction over Mohamed A.'s Petition and that Mohamed A. is likely to succeed on the merits of his claim that section 1225(b) is not applicable to him. The Court grants Mohamed A.'s Motion and issues an order requiring that he be provided a bond hearing.

### A. Legal Standards

Under Federal Rule of Civil Procedure 65, a district court has the power to grant injunctive relief by issuing either a temporary restraining order or a preliminary injunction. Courts apply "the same standards to a request for a preliminary injunction and temporary restraining order." Thompson v. Lakeville Area Schs., No. 24-cv-3717 (KMM/TNL), 2024 WL 4441769, at *5 (D. Minn. Oct. 8, 2024) (quoting Roberson v. Kansas City S. Ry. Co., 616 F. Supp. 3d 928, 935 (W.D. Mo. 2022)). Here, the Court treats Petitioner's Motion as one seeking a preliminary injunction because Respondents have received notice of the Motion, the matter is fully briefed, and the Court held a hearing. See C.S. McCrosan

Const. Inc. v. Minn. Dep't of Transp., 946 F. Supp. 2d 851, 857 n.10 (D. Minn. 2013) (treating a motion for TRO or preliminary injunction as a request for the latter because the plaintiff provided notice to all parties and the issues were fully briefed).

When deciding whether to grant a preliminary injunction, the Court considers the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Wilbur-Ellis Co., LLC v. Erikson, 103 F.4th 1352, 1355–56 (8th Cir. 2024) (quoting Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (quoting Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981))). These are commonly referred to as the Dataphase factors.

The movant bears the burden to establish the need for a preliminary injunction. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). However, a district court has "broad discretion in determining whether a preliminary injunction should be issued." Carlson v. City of Duluth, 958 F. Supp. 2d 1040, 1057 (D. Minn. 2013); Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006)

(same). In applying the Dataphase factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." Hubbard Feeds, Inc. v. Animal Feed Supp., Inc.,182 F.3d 598, 601 (8th Cir. 1999) (quoting United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998)).

**B. Legal Analysis**

**1. Jurisdiction**

Respondents argue that under 8 U.S.C. § 1252(g), the Court is precluded from reviewing Mohamed A.'s Petition and Motion. (Doc. 12 at 9–12.) Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate proceedings, or execute removal orders." 8 U.S.C. § 1252(g). This is a narrow provision that strips district courts of their jurisdiction in only the three enumerated circumstances: 1. decisions to commence proceedings, 2. adjudicate proceedings, or 3. execute removal orders. Belsai D.S. v. Bondi, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *4 (D. Minn. Oct. 1, 2025) (citing Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)); see also Dep't of Homeland Sec.

v. Regents of the Univ. of Calif., 591 U.S. 1, 19 (2020). Mohamed A., however, is not challenging the implementation of section 1225. Nor is he seeking judicial review of a final order of removal, an order of detention, or review of any discretionary action of the Attorney General or the Department of Homeland Security. Instead, Mohamed A. challenges Respondents' argument that his detention is mandatory under section 1225(b). Therefore, this Court finds that § 1252(g) does not bar review of Mohamed A.'s Petition by the Court.

### 2. Dataphase Factors

#### a. Likelihood of Success on the Merits

The Court starts with Petitioner's probability of success on the merits. Courts have stated that "the probability of success factor is the most significant." Cigna Corp. v. Bricker, 103 F.4th 1336, 1342 (8th Cir. 2024) (quotation omitted). To demonstrate a likelihood of success on the merits, the moving party must show "a fair chance, not necessarily greater than fifty percent, that it will ultimately prevail under applicable law." Id. at 1343 (quotation omitted and cleaned up).

The fundamental question raised in this case is whether Mohamed A. is an applicant for admission under section 1225(b), or a noncitizen residing in the United States under section 1226.

Respondents argue that because Mohamed A. is a noncitizen who is present in the United States without having been admitted, he is an "applicant" for admission under section 1225(b) and therefore subject to mandatory detention under section 1225(b)(2). (Doc. 12 at 3–5.) Courts have overwhelmingly rejected Respondents' interpretation that section 1225(b)(2) requires the mandatory detention of all noncitizens living in the country who are "inadmissible" because they entered the United States without inspection. See, e.g., Belsai D.S., 2025 WL 2802947, at *5–6 (collecting cases); Jose Andres R.E. v. Bondi, No. 25-CV-3946 (NEB/DLM), 2025 WL 3146312, at *1 n.2 (D. Minn. Nov. 4, 2025) (collecting cases); (Pet. ¶ 63(collecting cases).)[1] This Court also finds Respondents' interpretation unpersuasive.

When interpreting a statute, "every clause and word of a statute should have meaning." United States ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S.

[1] The Court also takes notes of the Honorable Jeffrey M. Bryan's December 9, 2025 decision in this District granting the petition for a writ of habeas corpus in Victor V. v. Bondi, No. 25-cv-04480 (JMB/ECW) (D. Minn. Dec. 9, 2025).

419, 432 (2023) (internal quotation marks omitted) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883)). Noncitizens who have been residing in the United States but who entered without inspection have not, historically, been considered to still be "arriving" under section 1225(b). This is because the statute itself states that, in order to apply, several conditions must be met; specifically, an immigration officer must determine that the noncitizen "is an applicant for admission . . . seeking admission . . . [and] not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Determining the plain meaning of the statute requires consideration of the tense of the verb "is" and the present participle "seeking." Here, section 1225(b)(2) applies to persons who presently are applicants for admission and who presently are seeking admission at the time of their detention. To be seeking admission means to be seeking entry, which "by its own force implies a coming from outside." United States ex rel. Claussen v. Day, 279 U.S. 398, 401 (1929). In this case, Mohamed A. has been residing in the United States and is, therefore, not currently "seeking admission" into the United States.

In addition, Respondents' interpretation of 1225(b)(2) renders superfluous other immigration laws. Specifically, interpreting section 1225(b)(2) as applying

to noncitizens who have already entered the country and are not currently seeking admission into the country, as Respondents urge, would render meaningless a recent amendment to section 1226 by the Laken Riley Act ("the LRA"). The LRA added new categories of noncitizens subject to mandatory detention under section 1226(c), and one such category was for noncitizens lacking valid documentation and who have been charged with or convicted of certain crimes. See 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). If Respondents' interpretation of section 1225 were correct, there would have been no need for the LRA to create these additional categories because all noncitizens who are present in the United States and have not been admitted would have already been ineligible for bond under section 1225(b)(2)(A).

The Court also agrees with those courts that have found that Respondents' interpretation of section 1225(b) is "at odds with both the relevant legislative history and longstanding agency practice." Belsai D.S., 2025 WL 2802947, at *7 (citing Maldonado v. Olson, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *11-12 (D. Minn. Aug. 15, 2025) (discussing the longstanding practice of treating noncitizens who resided in the United States, but who had entered without inspection, as subject to section 1226(a)).

Therefore, because section 1225(b) is inapplicable to Mohamed A., he is subject to the provisions of section 1226, which "sets forth a discretionary process for the apprehension and detention of aliens who are already present in the United States and eligible for removal." Selvin Adonay E.M. v. Noem, No. 25-CV-3975 (SRN/DTS), 2025 WL 3157839, at *3 (D. Minn. Nov. 12, 2025). Pursuant to section 1226(a), Mohamed A. is entitled to a bond hearing. 8 U.S.C. § 1226(a)(1)(2); see also Belsai D.S., 2025 WL 2802947, at *5–6; Jose Andres R.E., 2025 WL 3146312, at *1n.2. For these reasons, the Court finds that Mohamed A.'s detention is governed by § 1226(a), and he is not subject to §1225(b)'s mandatory detention provision.

Petitioner is likely to succeed on the merits of his Petition. Accordingly, this factor weighs in Petitioner's favor.

**b. Irreparable Harm**

The Court next considers whether Petitioner is threatened with irreparable harm. "A party seeking relief must demonstrate that the injury is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Jackson v. Macalester Coll., 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing Packard Elevator v. Interstate Comm. Comm'n, 782 F. 2d 112, 115

(8th Cir. 1986)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because [his] injuries cannot be fully compensated through an award of damages." Kato Eng'g, Inc. v. Hanley, 367 F. Supp. 3d 918, 923 (D. Minn. 2018) (citing Rogers Gr., Inc. v. City of Fayetteville, 629 F.3d 784, 789 (8th Cir. 2010)). A loss of liberty from unlawful detention "is perhaps the best example of irreparable harm." Matacua v. Frank, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018). Petitioner's detention demonstrates he has and continues to suffer irreparable harm. See Francisco T. v. Bondi, No. 25-cv-03219 (JMB/DTS), 2025 WL 2629839, at *4 (D. Minn. Aug. 29, 2025) ("[B]y virtue of Petitioner's ongoing loss of liberty, he has demonstrated significant irreparable harm."). This factor weighs in Petitioner's favor.

**c. Balance of Harms and the Public Interest**

Finally, the Court weighs the balance of harms and the public interest. While typically considered separately, these two factors "merge when the Government is the party opposing the preliminary injunction." Id. (quotation omitted). "The goal is to assess the harm the movant would suffer absent an injunction, as well as the harm other interested parties and the public would experience if the injunction issued." Katch, LLC v. Sweetser, 143 F. Supp. 3d 854,

875 (D. Minn. 2015) (citing Pottgen v. Missouri State High Sch. Activities Ass'n, 40 F.3d 926, 928 (8th Cir. 1994)). Courts also consider whether the preliminary injunction seeks to alter, rather than preserve, the status quo. See Adventist Health Sys./SunBelt, Inc. v. United States Dep't of Health & Hum. Servs., 17 F.4th 793, 806 (8th Cir. 2021) (affirming denial of preliminary injunction that would disrupt the status quo).

These factors weigh in favor of Petitioner. Petitioner is currently in detention, the archetypal example of a loss of liberty, and is facing a significant and ongoing harm. In contrast, the harm to Respondents is at most minor, if not nonexistent. Ordering Petitioner's release does not meaningfully harm Respondents nor impact their ability to continue to enforce their immigration laws. See Francisco T., 2025 WL 2629839, at *4 ("There is no discernable harm that will come to Respondents by granting Petitioner's requested relief, nor would this Court's ruling interfere with ICE's proper enforcement of U.S. immigration laws."). On the contrary, Petitioner's unlawful detention is a matter of great public interest. See, e.g., Günaydin v. Trump, No. 25-cv-01151 (JMB/DLM), 2025 WL 1218301, at *4 (D. Minn. Apr. 28, 2025) ("Preserving [the petitioner's] access to judicial review and preventing unlawful detention are

compelling issues of public importance."); Archuleta v. Hedrick, 365 F.3d 644, 648 (8th Cir. 2004) (considering the issue of unlawful detention as one of "substantial public interest[]"); see also R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (holding that "[t]he Government cannot suffer harm from an injunction that merely ends an unlawful practice") (quoting Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013)) (quotation marks omitted). Here, the Court finds that the balance of harms and the public interest support granting the Motion pending the outcome of this litigation.

**d. Conclusion**

Because all four requisite factors weigh in Petitioner's favor, the Court issues a preliminary injunction and orders Respondents to provide Petitioner a bond hearing in accordance with 8 U.S.C. § 1226(a) to determine Petitioner's ongoing custody within seven days.

## IV. ORDER

Consistent with the foregoing and based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED** that Petitioner Mohamed A.'s Emergency Motion for Temporary Restraining Order **[Doc. 4]** is **GRANTED in part** as follows:

1. Respondents are **PRELIMINARYLY ENJOINED** from moving Petitioner outside of the geographic boundaries of the District of Minnesota;
2. Respondents must hold a bond hearing in accordance with 8 U.S.C. § 1226(a) to determine Petitioner's ongoing custody within seven days;
3. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and
4. Within seven days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 11, 2025

s/Michael J. Davis
Michael J. Davis
United States District Court